JONES v POWELL

Docket No. 190678. Submitted September 10, 1997, at Detroit. Decided February 3, 1998, at 9:30 A.M. Leave to appeal sought.

Ruth Jones, individually and on behalf of her minor daughter, Shree M. Lee, brought an action in the Wayne Circuit Court against the city of Detroit and others, including Detroit Police Officers Charles Powell and Kenneth Winslow, following the entry and search of the plaintiffs' home without a warrant by members of the Detroit Police Department. The plaintiffs alleged false imprisonment and arrest, assault and battery, intentional infliction of emotional distress, and the failure to prevent or aid in preventing or attempting to prevent the commission of such wrongful acts. The plaintiffs also alleged that the defendants, acting under color of state law and pursuant to Detroit Police Department policy, deprived the plaintiffs of their federal civil rights. Finally, they alleged that the defendants conspired to deprive the plaintiffs of their federal constitutional rights and their rights under Const 1963, arts 1 and 2. The court, Carole F. Youngblood, J., granted summary disposition for the city of Detroit and the parties agreed to dismiss the actions against all the defendants except Powell and Winslow. The jury returned a verdict of no cause of action with regard to Winslow and to all the claims against Powell except those alleging constitutional violations, for which the jury awarded the plaintiffs damages. The court denied Powell's motion for judgment notwithstanding the verdict (JNOV) or a new trial. Powell appealed.

The Court of Appeals held:

There is no basis under Smith v Dep't of Public Health, 428 Mich 540 (1987), for recognizing a cause of action for damages against Powell for the alleged violation of the plaintiffs' rights under the Michigan Constitution. However, the Court is constrained by MCR 7.215(H) to follow the contrary decision in Johnson v Wayne Co, 213 Mich App 143 (1995). Nevertheless, the trial court should have granted Powell's motion for JNOV because the plaintiffs failed to prove, as required by Johnson, that the alleged constitutional violations occurred by virtue of a custom or policy that Powell was carrying out. The judgment entered against Powell must be vacated and the matter must be remanded for the entry of a judgment of no cause of action.

1. The *Smith* Court concluded that where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available. The *Smith* Court also concluded that a claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases. Thus, *Smith* recognized a narrow remedy against the state where none otherwise would have existed. None of the concerns identified in *Smith* that support a damage remedy for violations of the state constitution are applicable when the party that is alleged to have violated a plaintiff's federal or state constitutional rights is a municipality or an individual municipal employee rather than the state. There is no justification under *Smith* for the plaintiffs to assert state constitutional violation claims, even claims alleging an offensive custom or policy, against the municipal and individual defendants.

2. The *Johnson* Court, rather than focusing on the appropriateness of the applicability of *Smith* to nonstate defendants, focused entirely on the necessary elements for proving a constitutional tort claim. The *Johnson* Court concluded that the plaintiff's equal protection claims failed because the plaintiff failed to provide any evidence that, by virtue of a custom or policy, the municipal employee defendants deprived the plaintiff of equal protection. The *Johnson* Court merely assumed without explanation that a plaintiff could bring a claim for damages for violation of the state constitution against municipal employees.

3. Despite the holdings in *Johnson* and similar cases, *Marlin v Detroit*, 177 Mich App 108 (1989), and *Marlin v Detroit (After Remand)*, 205 Mich App 335 (1994), the *Smith* rationale simply does not apply outside the context of a claim that the state, or a state official sued in an official capacity, has violated individual rights protected under the state constitution. In light of other available remedies against nonstate entities, a *Smith*-based constitutional tort claim clearly is not appropriate where a municipality, or an individual municipal employee, is the alleged wrongdoer. Were it not for *Johnson*, the Court of Appeals would vacate the judgment against Powell on this basis. However, MCR 7.215(H) requires that *Johnson* be followed even though it is without basis in either federal or state case law.

4. *Johnson* provides that in order for the plaintiffs to prevail with regard to their constitutional violation claims against Powell, they must prove that the alleged violations occurred by virtue of a custom or policy that Powell was carrying out. *Johnson* requires a direct causal connection between the custom or policy at issue and the government employee's actions. Because the plaintiffs failed to

make the custom or policy showing enunciated in *Johnson*, the court should have granted Powell's motion for JNOV. The trial court erred in not giving full retrospective effect to the decision in *Johnson*, which was not issued until after the instant case was tried.

Vacated and remanded.

MURPHY, J., concurring in the result, wrote separately to state that *Johnson* does not obligate the Court of Appeals to recognize a cause of action in all cases in which a plaintiff alleges a violation under the state constitution against an individual defendant. *Johnson* merely addresses the nature of the proof necessary for a plaintiff to prevail in a suit against an individual defendant under the state constitution once such a cause of action has been found to exist. *Johnson* is silent with respect to the propriety of inferring a constitutional tort but, rather, presumes that such an inference is appropriate and then disposes of the claim on the ground that the plaintiff failed to present the proof necessary to prevail in the suit. *Johnson* wrongly applied the custom or policy requirement because that analysis applies to a claim against a governmental entity but not to a claim against an individual. Although *Smith* found that a claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases, the *Smith* Court's analysis in reaching its holding could be equally applicable to a claim for damages against an individual, acting in an official capacity, arising from a violation by the individual of the state constitution. A damages remedy should not have been inferred from the state constitution in this case. A judicially inferred cause of action under the Michigan Constitution is unwarranted in this case because the plaintiffs' claims against the individual defendants under 42 USC 1983 brought in the United State District Court provide the plaintiffs with a means to sufficiently vindicate their state constitutional rights through the analogous protections of their federal constitutional rights. The majority's decision to review the evidence and come to a different conclusion than the jury is unnecessary. Because there was no need for the trial court to infer a cause of action against Powell under the state constitution, the trial court should have granted the motion for a directed verdict by Powell and Winslow.

CONSTITUTIONAL LAW — MUNICIPAL EMPLOYEES — CONSTITUTIONAL VIOLATION CLAIMS.

A plaintiff may bring a cause of action for damages against a municipal employee alleging violation of the plaintiff's rights under the Michigan Constitution; the plaintiff must prove that the alleged violation occurred by virtue of a custom or policy that the employee was carrying out, and there must be a direct causal connection

between the custom or policy at issue and the municipal
employee's actions.

*Jerome E. Crawford,* for the plaintiffs.

City of Detroit Law Department (by *Phyllis A. James,* Corporation Counsel, and *Joanne D. Stafford,* Chief Assistant Corporation Counsel), for Charles Powell.

Before: BANDSTRA, P.J., and MURPHY and YOUNG, JJ.

YOUNG, J. Defendant Detroit Police Sergeant Charles Powell appeals as of right a judgment in favor of plaintiffs, entered pursuant to a jury verdict, in this action arising out of the entry and search of plaintiffs' home without a warrant by members of the Detroit Police Department. The instant appeal arises from the trial court's decisions denying Powell's motions for a directed verdict and judgment notwithstanding the verdict (JNOV) on plaintiffs' claims for damages for the alleged violation of plaintiffs' rights under the Michigan Constitution. We vacate the judgment entered against Powell and remand for the entry of a judgment of no cause of action.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 29, 1991, several Detroit police officers were pursuing an individual suspected of assault and operating a stolen vehicle. The officers believed that the suspect ran into a nearby house owned by Ruth Jones (hereafter plaintiff). Plaintiff was home with her minor daughter, plaintiff Shree Lee, when she heard a man's voice yell, "He's in 17331," followed by the sounds of a crash and a window breaking. Plaintiff and her daughter ran to a back bedroom for several minutes. Plaintiff heard loud voices saying, "B——,

open up the mother f—ing door, we know he's in there." Plaintiff returned to the living room, where she saw that the front storm door and inner door had been forcefully opened. However, a security gate remained locked. Plaintiff told the officers that no one was in the house but plaintiff and her baby.

Pursuant to the officers' demands, plaintiff retrieved her keys and opened the security gate. Plaintiff testified that the officers entered the house and that two of the officers, defendants Powell and Kenneth Winslow, pointed their guns at her. Plaintiff was allowed to go next door to her sister's house, while the officers, with the aid of a police dog, searched plaintiff's home. However, no one was found inside. Plaintiff testified that she did not give the officers consent to enter or search the house.

Plaintiff, individually and on behalf of her daughter, filed suit against the city of Detroit, Powell, and several other Detroit Police officers, alleging false imprisonment and arrest, assault and battery, intentional infliction of emotional distress, and failure "to prevent, or aid in preventing, and/or attempt to prevent the commission of such wrongful acts." Plaintiffs also alleged that defendants, acting under color of state law and pursuant to Detroit Police departmental policy, deprived plaintiffs of their federal civil rights. Finally, plaintiffs alleged that defendants conspired to deprive plaintiffs of their federal constitutional rights, as well as their rights under Const 1963, arts 1 and 2.

The trial court granted summary disposition to the city of Detroit on all of plaintiffs' claims, and plain-

tiffs proceeded to trial against the individual officers.[1] On the second day of trial, shortly before opening arguments commenced, plaintiffs agreed to dismiss the actions against all the individual officers except two, Powell and Winslow. After the close of plaintiffs' proofs, Powell and Winslow moved for a directed verdict on, among others, plaintiffs' constitutional violation claims, arguing that Michigan did not recognize a cause of action "against individual officers under the Michigan Constitution." The trial court initially took the motion under advisement with respect to the constitutional violation claims, but denied it after the defense presented its case.

The jury returned a verdict of no cause of action with respect to Winslow and found in favor of Powell with regard to all but plaintiffs' constitutional violation claims. On those claims, the jury awarded $75,000 to plaintiff and $126,000 to her daughter. Powell moved for JNOV or a new trial. Powell argued, inter alia, that even if plaintiffs did have a cause of action against him under the Michigan Constitution, plaintiffs nevertheless failed to prove that he acted in accordance with a Detroit Police Department custom or policy. The trial court denied the motion.

## II. ANALYSIS

Powell first argues that there is no basis under our Supreme Court's decision in *Smith v Dep't of Public Health*, 428 Mich 540; 410 NW2d 749 (1987), aff'd sub

---

[1] Defendants initially removed the action to the United States District Court for the Eastern District of Michigan, but the federal district court remanded plaintiffs' state claims to the trial court. The federal district court dismissed plaintiffs' claims, brought under 42 USC 1983, against the city of Detroit. However, the record does not indicate the eventual disposition of plaintiffs' § 1983 claims brought against the individual officers.

nom *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), for recognizing a cause of action for damages against him for the alleged violation of plaintiffs' rights under the Michigan Constitution. We agree, but are constrained by MCR 7.215(H) to follow this Court's contrary decision in *Johnson v Wayne Co*, 213 Mich App 143; 540 NW2d 66 (1995). However, for the reasons stated below, we conclude that the trial court should have granted Powell's motion for JNOV because plaintiffs failed to prove, as required by *Johnson*, that the alleged constitutional violations occurred by virtue of a custom or policy that Powell was carrying out.

### A. INTRODUCTION

In *Smith*, our Supreme Court, apparently in recognition of the limited availability of damage remedies against the state, held that, under appropriate circumstances, a plaintiff could bring a claim for damages against the state for violation by the state of the Michigan Constitution. *Smith, supra* at 544. Although we do not believe that the narrow holding in *Smith* authorizes plaintiffs in this case to bring state constitutional violation claims against Powell, a municipal employee, we must follow *Johnson* under MCR 7.215(H).

### B. STATE CONSTITUTIONAL VIOLATION CLAIMS—*SMITH v DEP'T OF PUBLIC HEALTH*

*Smith, supra*, and its companion case, *Will v Dep't of Civil Service*, involved claims based on common-law tort, 42 USC 1983, and the Michigan Constitution. The plaintiffs in both cases sued the state. The plaintiff in *Will* also sued the Director of State Police in his official capacity. Justice BRICKLEY's separate

opinion included an exhaustive review of federal Eleventh Amendment case law, as well as the history of the Civil Rights Act of 1871, now codified at 42 USC 1983. A majority of the Court concluded that neither the state nor a state official sued in an official capacity was a "person" for purposes of a damages suit under §1983. *Smith, supra* at 544.

Regarding the nonconstitutional tort claims involved, a majority of the Court concluded that "[t]here is no 'intentional tort' exception to governmental immunity." *Id.* The Court then considered whether governmental immunity would be available in a state court action wherein it was alleged that the state had violated a right conferred by the Michigan Constitution. See *id.* at 640 (BOYLE, J.). Justice BOYLE, in her separate opinion, noted that for so-called "constitutional torts," "liability should only be imposed on the state in cases where a state 'custom or policy' mandated the official or the employee's actions." *Id.* at 642. Justice BOYLE explained at 642-643:

> The state's liability should be limited to those cases in which the state's liability would, but for the Eleventh Amendment, render it liable under the 42 USC 1983 standard for local governments articulated in *Monell v New York City Dep't of Social Services*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). Liability should be imposed on the state only where the action of a state agent "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*, pp 690-691. Thus, statutory immunity would continue to bar suit for cases in which the only possible liability of the state is based upon respondeat superior. Cf. *id.*, 691-694.

A limitation of the state's liability to situations in which the injury occurs as the result of a custom or policy of the state is dictated by prudential concerns. First, the public policy concerns which militate a remedy are greatest when the state has such "primary governmental liability." Compare Note, *Rethinking sovereign immunity after* Bivens, 57 NYU L R 597, 637 (1982) . . . . This standard avoids the spectre of multitudinous lawsuits against the state for the unauthorized tortious acts of employees. Such a cause of action also is "more manageable: causation is more easily proven and the locus of liability is more readily ascertained." *Id.* It also serves the objective of deterring future similar unconstitutional acts while still providing compensation for the injured party. *Id.*

In a case involving an alleged unconstitutional act by the state government, neither sovereign nor statutory immunity should bar liability.

While only Justice CAVANAGH expressly concurred in this rationale, a majority of the Court concluded that "[w]here it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action." *Id.* at 544.

Finally, the Court addressed a question that is particularly germane to this appeal, namely, whether a damage remedy exists for violation of individual rights protected by the Michigan Constitution. A majority of the Court concluded that "[a] claim for damages *against the state* arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." *Id.* (emphasis added). Citing *Bivens v Six Unknown Federal Narcotics Agents*, 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971), in which the United States Supreme Court "recognized a cause of action for damages against individual federal officers arising directly from the Fourth Amendment,"

*Smith, supra* at 645, Justice BOYLE explained in her separate opinion that there are "circumstances in which a constitutional right can only be vindicated by a damage remedy and where the right itself calls out for such a remedy," and that the absence of any other remedy would "heighten the urgency of the question." *Id.* at 647.

Again, while the rationale advanced by Justice BOYLE did not garner support by a majority of the Court, the majority's express holding and the separate opinion by Justice BRICKLEY also focus on the unique status of the *state* regarding its otherwise comprehensive immunity from liability as a critical factor in the Court's determination that a narrow exception to that immunity should be created. Thus, we read *Smith* as recognizing a narrow remedy against the state where none otherwise would have existed. Conversely, we believe that none of the concerns identified in *Smith* that support a damage remedy for violations of the state constitution are applicable when the party that is alleged to have violated a plaintiff's state or federal constitutional rights is a municipality or an individual municipal employee rather than the state.

In cases involving entities other than the state as a party defendant, the plaintiffs have available a number of alternative remedies. This is because municipalities, unlike states and state officials sued in an official capacity, are not protected by the Eleventh Amendment, which, of course, safeguards the *state's* sovereignty in our federal system of government. *Lake Country Estates, Inc v Tahoe Regional Planning Agency,* 440 US 391; 99 S Ct 1171; 59 L Ed 2d 401 (1979); *Fitzpatrick v Bitzer,* 427 US 445, 456; 96 S Ct 2666; 49 L Ed 2d 614 (1976). Accordingly, local

government units may be sued in federal or state court under §1983. *Monell, supra* at 690, n 54; *Moore v Detroit,* 128 Mich App 491, 499; 340 NW2d 640 (1983). Relatedly, it is clear that individual government employees cannot seek immunity for their intentional torts. *Blackman v Cooper,* 89 Mich App 639, 643; 280 NW2d 620 (1979).[2]

Here, plaintiffs were free to, and did, assert claims of false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, and deprivation of civil rights in violation of §1983. Accordingly, there simply was no justification under *Smith* for plaintiffs here to assert state constitutional violation claims, even claims alleging an offensive custom or policy, against these municipal and individual defendants. As Justice BOYLE noted in *Smith,* "[w]here a statute provides a remedy, the stark picture of a constitutional provision violated without remedy is not presented." *Smith, supra* at 647.

Despite the limited scope of the damage remedy for the *state's* violation of rights under the Michigan Constitution that was recognized in *Smith,* a panel of this Court in *Marlin v Detroit,* 177 Mich App 108, 114; 441 NW2d 45 (1989) *(Marlin I),* applied the *Smith* holding to a constitutional violation claim brought against a local government and it did so without any analysis of the rationale underlying *Smith* or any consideration whether it was applicable to any entity other than the state:

---

[2] As stated, it appears that the *Smith* Court's holding (with respect to "constitutional claims" brought against the state) is a function of its determination that the state, including a state official sued in an official capacity, was not a "person" for purposes of a damage suit under §1983, and that there is no intentional tort exception to the state's statutory immunity. See *Smith, supra* at 544.

[P]laintiff argues that the trial court erred in granting defendant's motion for summary disposition on plaintiff's constitutional violation claim. We agree.

Paragraph 27 of plaintiff's complaint alleges that defendant denied plaintiff her right to equal protection and due process of law under Const 1963, art 1, §§ 2, 17. In Michigan, governmental immunity is not available in a state court action where it is alleged that the state violated a right conferred by the state constitution. *Smith, supra*, p 544; *Burdette v Michigan*, 166 Mich App 406, 408-409; 421 NW2d 185 (1988). Under *Smith*, defendant cannot claim immunity where plaintiff alleges that defendant has violated the state constitution by virtue of custom or policy. *Smith, supra*, p 544. Pursuant to *Smith*, we remand for a determination of whether plaintiff has pled a violation of the Michigan Constitution by virtue of a governmental custom or policy.

After remand, in *Marlin v Detroit (After Remand)*, 205 Mich App 335, 338; 517 NW2d 305 (1994) *(Marlin II)*, this Court noted that the plaintiff's claim for damages under Const 1963, art 1, §17 that her procedural due process rights were violated by the defendant city depended "upon a showing that, by virtue of a custom or policy, defendant deprived plaintiff of her property without due process of law." In neither *Marlin I* nor *II* does it appear that this Court directly considered whether the *Smith* doctrine might be properly applied to a party defendant other than the state. To the contrary, it is clear that the Court's focus in these decisions was on the proofs required to establish that a constitutional tort was committed.

In *Johnson, supra*, this Court extended *Smith* still further. In *Johnson*, at 149, the plaintiff brought suit against several employees of the Wayne County Jail alleging, inter alia, violations of the Michigan Consti-

tution.[3] The *Johnson* Court, *id.* at 150-151, citing Justice BOYLE's separate opinion in *Smith*, explained:

> Although this claim [violation of equal protection] is one against the individual defendants only, we believe that the requirement that a custom or policy be shown to sustain a constitutional tort must also be met. That is, where a plaintiff alleges a constitutional tort against governmental employees only, the plaintiff must show that the alleged constitutional violation occurred by virtue of a custom or policy that the governmental employees were carrying out. See *Smith, supra,* pp 642-643 (BOYLE, J.).

The Court concluded that the plaintiff's equal protection claim failed because "she has failed to provide any evidence that, by virtue of a custom or policy, defendants deprived her of equal protection." *Johnson,* at 151. We believe, however, that a correct analysis of *Smith* prevents such a claim, regardless of whether offensive behavior occurred by virtue of a custom or policy. As in *Marlin I* and *II,* the *Johnson* panel focused entirely on the necessary elements for proving a constitutional tort claim rather than the appropriateness of applying *Smith* to nonstate defendants. Thus, it appears that the *Johnson* Court merely assumed without explanation that a plaintiff could bring a claim for damages for violation of the state constitution against municipal employees.

We can readily understand why any reader of *Smith,* including the Court of Appeals, has had difficulty in parsing that decision. Although six justices signed the two-page memorandum opinion announcing the decision of the Court, the six did not concur

---

[3] The plaintiff in *Johnson* alleged violations of Const 1963, art 1, § 2 (equal protection), § 16 (cruel or unusual punishment), and § 17 (due process). *Id.*

on each of the legal propositions contained in the
memorandum opinion. The memorandum opinion is
followed by more than one hundred pages encom-
passing four separate opinions wherein the six jus-
tices that participated in the decision articulated their
several bases for supporting or rejecting the proposi-
tions contained in the memorandum opinion. Conse-
quently, while *Smith* provides a majority decision, it
is exceedingly difficult to discern the rationale sup-
ported by a majority of justices for each aspect of
that decision. Even when one can identify four jus-
tices who support a particular legal proposition in the
memorandum opinion, the rationale for support var-
ies among them.

Despite the holdings in *Marlin I* and *II* and *John-
son*, we conclude that the *Smith* rationale simply
does not apply outside the context of a claim that *the
state* (or a state official sued in an official capacity)
has violated individual rights protected under the
Michigan Constitution. In light of other available rem-
edies against nonstate entities, a *Smith*-based consti-
tutional tort claim clearly is not "appropriate" where
a municipality, or an individual municipal employee,
is the alleged wrongdoer. Consequently, were it not
for this Court's decision in *Johnson*, we would vacate
the judgment against Powell on that basis. However,
we are required to follow *Johnson* under MCR
7.215(H)  even though we believe that *Johnson* is
without basis in either federal or state case law.

C. *JOHNSON v WAYNE CO*'s CUSTOM OR POLICY REQUIREMENT

As stated previously, under *Johnson*, in order for
plaintiffs to prevail on their constitutional violation
claims against Powell, they were required to prove

that the alleged constitutional violations occurred by virtue of a custom or policy that Powell was carrying out. *Johnson, supra* at 150-151.[4] We read *Johnson* as requiring a direct causal connection between the custom or policy at issue and the government employee's actions.[5] We conclude that the trial court should have granted Powell's motion for JNOV because plaintiffs failed to make the custom or policy showing enunciated in *Johnson.*

In reviewing a motion for JNOV, this Court views the evidence and all legitimate inferences that may be drawn from the evidence in a light most favorable to the nonmoving party. *Matras v Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986); *Severn v Sperry Corp,* 212 Mich App 406, 412; 538 NW2d 50 (1995). "If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand." *Id.* at 412.

---

[4] Again, while we are constrained to follow *Johnson,* we believe that the *Johnson* Court not only erred in allowing a *Smith*-based constitutional tort claim to be brought against individual governmental employees, but confused matters even further by applying the custom or policy standard from *Smith* in determining liability. The custom or policy standard first arose as a means of holding a *local government* liable under § 1983 for the acts of its agents. See *Monell, supra* at 690-691. Justice BOYLE's opinion in *Smith,* in turn, merely suggested that the same standard should apply to hold the state liable for damages where a state custom, policy, or practice mandated the state official or employee's actions. See *Smith, supra* at 642-643. Contrary to the decision in *Johnson,* because constitutional tort claims brought solely against individual municipal employees have nothing to do with whether the municipality itself can be held liable, the custom or policy analysis derived from § 1983 cases simply ought not to apply.

[5] Because *Johnson* created a cause of action against municipal employees that had not previously been recognized in Michigan, we decline to go beyond *Johnson's* express holding in assessing Powell's liability in this case.

Initially, we note that the trial court should have applied *Johnson* to the facts of the case at bar. In denying Powell's motion for JNOV, the trial court declined to apply *Johnson* on the ground that it was not issued until after the instant case was tried. However, the general rule is to give full retroactive effect to the decisions of Michigan appellate courts "unless limited retroactivity is preferred where justified by the purpose of the new rule, the general reliance upon the old rule, and the effect of full retroactive application of the new rule on the administration of justice." *Buckeye Marketers, Inc v Finishing Services, Inc,* 213 Mich App 615, 617-618; 540 NW2d 757 (1995). Even before *Johnson,* this Court in *Marlin II, supra,* held that a constitutional violation claim depended upon a showing that the plaintiff was deprived of constitutional rights by virtue of a custom or policy. *Marlin II, supra* at 338. Therefore, we see no justification in this case to deny full retroactive effect to the *Johnson* holding.[6]

The trial court ruled in the alternative that, even if *Johnson* did apply, plaintiffs proved that Powell's conduct "was pursuant to a custom[,] policy or practice of the Detroit Police Department" because the department "condoned" and "approved" of his conduct. In support of its decision, the trial court found that the police department failed to discipline Powell "for illegally entering the [p]laintiffs' home at gun

---

[6] Indeed, after *Marlin I* and *II,* we believe that *Johnson* was a predictable step in the evolution of the *Smith* doctrine, albeit one that we conclude was entirely unsupported by *Smith* itself.

point and searching their home without a warrant."
There are two fundamental problems with the trial
court's ruling. First, the evidence presented at trial
does not support the trial court's finding that Powell
was not disciplined. Although Detroit Police Chief
Stanley Knox testified that, in his opinion, the entry
and search of plaintiffs' home without a warrant was
not justified under the circumstances, regarding the
issue of discipline, Chief Knox testified only that he
did not have personal knowledge whether any disci-
plinary actions were taken against the officers
involved in the incident.

Second, even if the police department did fail to
discipline Powell, we conclude that no reasonable
jury, on the basis of the evidence presented, could
have found that Powell deprived plaintiffs of their
constitutional rights *by virtue of* a custom, policy, or
practice that he was carrying out. *Johnson, supra.*
Plaintiffs have presented no evidence that the Detroit
Police Department directly ordered or authorized
Powell's conduct. Moreover, the record does not
reflect any other similar incidents involving failures to
discipline that could reasonably have led the jury to
find that the police department approved of or con-
doned entries and searches of citizens' homes without
a warrant and that such a custom or policy was caus-
ally related to Powell's actions. Therefore, because
plaintiffs failed to make the specific custom or policy
showing required by *Johnson*, we conclude that the
trial court should have granted Powell's motion for
JNOV.

### III. CONCLUSION

The trial court's judgment with regard to the jury verdict in favor of plaintiffs is vacated and this case is remanded for the entry of a judgment of no cause of action. In light of our decision, we need not address Powell's remaining appellate arguments.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

BANDSTRA, P.J., concurred.

MURPHY, J. (*concurring*). I concur in the result reached in the lead opinion and write separately to briefly state my reasoning.

Initially, I would indicate that I do not read *Smith v Dep't of Public Health*, 428 Mich 540, 644-648; 410 NW2d 749 (1987), aff'd sub nom *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), as narrowly as does the lead opinion, nor do I read *Johnson v Wayne Co*, 213 Mich App 143; 540 NW2d 66 (1995), as broadly as the lead opinion appears to do. I do not read *Johnson* as obligating this Court to recognize a cause of action in all cases in which a plaintiff alleges a violation under the Michigan Constitution against an individual defendant. Rather, I interpret the language in *Johnson*, with which the lead opinion takes issue, as merely addressing the nature of the proof necessary for a plaintiff to prevail in a suit against an individual defendant under the Michigan Constitution, only after such a cause of action has been found to exist. In *Johnson*, this Court stated:

[A]lthough this claim is one against the individual defendants only, we believe that the requirement that a custom or policy be shown to sustain a constitutional tort must also be met. That is, where a plaintiff alleges a constitutional tort against governmental employees only, the plaintiff must show that the alleged constitutional violation occurred by virtue of a custom or policy that the governmental employees were carrying out. [*Id.*, 150-151.]

*Johnson* is silent with respect to the propriety of inferring a constitutional tort but, rather, *presumes* that such an inference is appropriate, and then disposes of the claim on the ground that the plaintiff failed to present the proof necessary to prevail in the suit. *Id.*, 150-155. I concur with the lead opinion that the panel in *Johnson* wrongly applied the custom or policy requirement because that analysis applies to a claim against a governmental entity but not, in my opinion, to a claim against an individual. However, because I would resolve this case on an alternative ground, I find it unnecessary to join the majority's decision to review the evidence and come to a different conclusion than the jury.

In *Smith, supra,* Justice BOYLE, joined by Justice CAVANAUGH, discussed the propriety of inferring a cause of action under the Michigan Constitution. Justice BOYLE "would recognize the propriety of an inferred damage remedy arising directly from violations of the Michigan Constitution in certain cases." *Smith, supra,* 647. Relying upon *Bivens v Six Unknown Federal Narcotics Agents,* 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971), Justice BOYLE opined that "there are circumstances in which a constitutional right can only be vindicated by a damage remedy and where the right itself calls out for such a remedy." *Smith, supra,* 647. However, "[w]here a stat-

ute provides a remedy, the stark picture of a constitutional provision violated without remedy is not presented." *Id.* Because four justices in *Smith* agreed to remand the case to the trial court to determine whether a damages remedy was proper under the Michigan Constitution, "whether damage remedies are available under our constitution [is] an issue as yet unresolved in our jurisprudence." *Middlebrooks v Wayne Co*, 446 Mich 151, 175-176; 521 NW2d 774 (1994).

Although I recognize that a majority of . our Supreme Court in *Smith* agreed that "[a] claim for damages *against the state* arising from violation *by the state* of the Michigan Constitution may be recognized in appropriate cases," *Smith, supra*, 544 (emphasis added), I believe that the analysis employed by our Supreme Court in reaching this holding could be equally applicable to a claim for damages *against an individual*, acting in his official capacity, arising from a violation *by the individual* of the Michigan Constitution. I arrive at this conclusion because our Supreme Court in *Smith* relied upon *Bivens, supra*, in recognizing the possible propriety of inferring a damages remedy directly from the Michigan Constitution. *Id.*, 644-652. In *Bivens*, the United States Supreme Court recognized a cause of action arising directly from the Fourth Amendment of the federal constitution against *individual federal officers*. *Bivens, supra*, 389. Thus, the same analysis used by our Supreme Court in *Smith* for deciding whether to infer a cause of action from the Michigan Constitution would also apply to a claim against an individual defendant. It may well be that a state constitutional violation claim against an individual will be

more limited than a claim against the state because
other remedies are available against the individual,
but such a determination would have to be made case
by case.

Nevertheless, I concur with the majority that a
damages remedy should not have been inferred from
the Michigan Constitution in this case. Plaintiffs
alleged violations of the Michigan Constitution, Const
1963, art 1, §§ 11 (search and seizure) and 17 (due
process). Notably, however, plaintiffs also sought
damages against defendants under 42 USC 1983,
alleging violations of the analogous provisions of the
federal constitution. It was acknowledged at oral
argument that plaintiffs' claims against the individual
officers under § 1983 were pending in federal court at
the time this case came to trial. Although § 1983 does
not provide a remedy for violation of state rights, it
does provide a remedy for violation of federal consti-
tutional and statutory rights. *Middlebrooks, supra,*
175. Because I believe that § 1983 provides plaintiffs
with the means to sufficiently vindicate their state
constitutional rights through the analogous protec-
tions of their federal constitutional rights, I would
find that a judicially inferred cause of action under
the Michigan Constitution is unwarranted in this case.
In other words, this is not a case, such as *Bivens,* in
which the "stark picture of a constitutional provision
violated without remedy is . . . presented." *Smith,
supra,* 647.

Accordingly, because there was no need in this
case for the trial court to infer a cause of action
against appellant under the Michigan Constitution, the
trial court should have granted defendants' motion for
a directed verdict.