*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT REEVES,

    Plaintiff-Appellee,

v

COUNTY OF WAYNE and DAVIDDE STELLA,

    Defendants-Appellants,

and

DENNIS DOHERTY,

    Defendant.

FOR PUBLICATION
June 09, 2025
10:08 AM

No. 367444
Wayne Circuit Court
LC No. 23-003148-CZ

---

ROBERT REEVES,

    Plaintiff-Appellee/Cross-Appellant,

v

COUNTY OF WAYNE and DAVIDDE STELLA,

    Defendants-Appellants/Cross-Appellees,

and

DENNIS DOHERTY,

    Defendant/Cross-Appellee.

No. 367447
Wayne Circuit Court
LC No. 23-003148-CZ

---

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

ACKERMAN, J.

After Robert Reeves challenged Wayne County's controversial civil forfeiture program in federal court,[1] he says the County retaliated—reviving a dormant criminal case and selectively prosecuting him for bringing that suit. The charges against Reeves were ultimately dismissed (twice) for lack of evidence. This appeal asks whether Reeves's claims of retaliatory prosecution can survive governmental immunity and pleading challenges. In Docket No. 367447, defendants Wayne County and Davidde Stella appeal by right the trial court's partial denial of summary disposition under MCR 2.116(C)(7) (governmental immunity). In Docket No. 367444, they appeal by leave granted the same order's partial denial of summary disposition under MCR 2.116(C)(8) (failure to state a claim). Reeves cross-appeals the partial grant of summary disposition. After rejecting a portion of the appeal as moot, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

According to the complaint,[2] in July 2019, Javone Williams—an associate with whom plaintiff had previously worked—asked him to meet at a job site, where plaintiff demonstrated that he knew how to operate a skid-steer loader. Plaintiff then drove to a nearby gas station, where he was stopped by officers assigned to a Michigan State Police task force investigating thefts of rental equipment from Home Depot. Officers questioned plaintiff about the skid-steer loader, detained him briefly in a local jail, and then released him without filing charges. They also seized plaintiff's 1991 Chevrolet Camaro and $2,280 in cash, which were retained as part of "omnibus forfeiture proceedings" submitted to the Wayne County Prosecutor.

In September 2019, the Michigan State Police sought arrest warrants for several individuals, including plaintiff and Williams, but did not follow through with them. Several months later, on February 14, 2020, plaintiff helped lead a federal class action challenging the constitutionality of Wayne County's forfeiture program. Wayne County was represented in that case by Stella, an assistant corporate counsel. The very next day, the Wayne County Prosecutor's Office directed the Michigan State Police to release the assets seized from plaintiff and Williams. That same day, defendant Dennis Doherty, an assistant prosecutor, contacted the officer in charge of the earlier warrant request and received a revised version that named only plaintiff and Williams, omitting the others previously included. Plaintiff alleges that Doherty instigated that filing.

Plaintiff was arrested on May 8, 2020. The 36th District Court dismissed the charges at a preliminary examination in February 2021 for lack of evidence. The Prosecutor's Office refiled

---

[1] See *Ingram v Wayne Co*, 81 F4th 603 (CA 6, 2023), abrogated by *Culley v Marshall*, 601 US 377; 144 S Ct 1142; 218 L Ed 2d 372 (2024). The program has been characterized as "a money-making venture . . . most often used to extort money from those who can least afford it." *Ingram*, 81 F4th at 623 (Thapar, J., concurring).

[2] Because this appeal stems from a ruling on the pleadings, no discovery has taken place. As noted in our discussion of the standards of review, we treat plaintiff's factual allegations as true for purposes of this analysis.

the charges, but they were dismissed again after a second preliminary examination in January 2022.

In this case, plaintiff alleges that Doherty, acting at Stella's direction, pursued "baseless" charges in retaliation for his exercise of First and Fourteenth Amendment rights through the federal class action. The complaint asserts claims under the Michigan Constitution, 42 USC 1983, and the state-law torts of malicious prosecution and abuse of process.

Defendants moved for summary disposition on the grounds of governmental immunity and failure to state a claim. In July 2023, the trial court granted the motion in part, dismissing plaintiff's claims under the Michigan Constitution for failure to state a viable cause of action and dismissing all claims against Doherty based on absolute prosecutorial immunity. The court denied summary disposition as to the remaining claims and noted that plaintiff would be "permitted to amend his Complaint to alleg[e] intentional torts with more particularity." Plaintiff later filed an amended complaint in the trial court while this appeal was pending.

Wayne County and Stella now appeal the trial court's refusal to dismiss all claims against them. Plaintiff cross-appeals the dismissal of his claims against Doherty and his claims for injunctive and monetary relief under the Michigan Constitution.

## II. PLAINTIFF'S PLEADINGS

Defendants' primary argument on appeal is that plaintiff's original complaint failed to adequately plead his claims under 42 USC 1983 and Michigan tort law. They contend that a lack of probable cause is a required element of each claim and that the complaint offered only conclusory allegations on that point. According to defendants, the trial court should have granted their motion for summary disposition under MCR 2.116(C)(8) and then permitted plaintiff to seek leave to amend his complaint—an approach they believe would have led to the dismissal of most or all claims. But that argument misreads the rule: The court rules do not mandate the rigid sequence defendants envision.

The standards governing motions under MCR 2.116(C)(8) are familiar. Such a motion "tests the *legal sufficiency* of a claim based on the factual allegations in the complaint," and "a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160. Less familiar are the procedures that apply when such a motion is granted. Under MCR 2.116(I)(5), "[i]f the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." The question, then, is how trial courts must implement that requirement.

There is little dispute that the opportunity to amend a pleading under MCR 2.116(I)(5) generally applies only when a motion under MCR 2.116(C)(8) has merit. See, e.g., *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) ("If a court grants summary disposition pursuant to MCR 2.116(C)(8), (9), or (10), the court must give the parties an opportunity to amend their

pleadings . . . ."). But "[t]he rule is not specific on the order of [the] rulings." 1 Longhofer & Quick, Michigan Court Rules Practice, Text, § 2116.18 (8th ed), p 550. Courts have implemented the rule in a variety of legitimate ways. "The usual practice is to enter a conditional order stating that summary disposition is granted unless an amended pleading is filed by a certain time. However, nothing forbids a court from allowing an amendment even after granting summary disposition if the amendment is sufficient." *Id*. Defendants' assertion that the rule mandates a particular sequence is not supported by the text or case law.

Reported decisions reflect that flexibility. In *Codd v Wayne Co*, 210 Mich App 133, 137; 537 NW2d 453 (1995), we found it sufficient that "the trial court, in lieu of requiring plaintiffs to file formally an amended complaint, allowed the parties to present supplemental briefs." In *ABB Paint Finishing, Inc v Nat'l Union Fire Ins Co*, 223 Mich App 559, 564; 567 NW2d 456 (1997), we observed that a plaintiff could "request[] leave to amend its complaint before the trial court rules on a motion under C(8)," which "the trial court should normally allow" under MCR 2.116(I)(5). Those examples confirm that the rule offers far more procedural flexibility than defendants suggest.

Although defendants misread the rule, we must still consider whether the trial court complied with it. We review a trial court's interpretation and application of court rules de novo. *In re Ott*, 344 Mich App 723, 735; 2 NW3d 120 (2022).

The motion practice in the trial court was not a model of clarity. Defendants moved for summary disposition under both MCR 2.116(C)(7) and (8), without specifying which arguments were asserted under which subrule. Perhaps as a result, the trial court's decision was similarly muddled. The court stated that factual development was necessary "to establish whether Stella was acting in good faith"—language inconsistent with a (C)(8) ruling, which requires a decision based solely on the pleadings. Yet the court also stated that plaintiff would be "permitted to amend his Complaint to alleg[e] intentional torts with more particularity," echoing the language and purpose of MCR 2.116(I)(5). That statement could reasonably be construed as the trial court implicitly granting the motion—because leave to amend under (I)(5) usually presumes that the underlying motion had merit. When defense counsel sought clarification, the court continued to blend concepts in those rules:

> *The Court*. I think what I ruled is that the malicious prosecution is an intentional tort and there needs to be a development, a factual development of that before I can make a determination—

> *Ms. Henderson*. Right, Your Honor—

> * * *

> *The Court*. I'm not sure what you're asking.

> *Ms. Henderson*. No, I think our argument is that as pled the facts as pled are that there was a facially valid—

> *The Court*. Yeah, but the Court rule allows her to amend—amend her Complaint, if she wishes to add more specificity.

-4-

*Ms. Henderson*. Such that is the Court ruling that she—that claim will be granted if she can't [sic] more specificity?

*The Court*. No. No, I'm permitting her the opportunity to add more specificity and then we can just take it from there, I suppose. If you think there's still a need to file a motion on that issue. But, the Court is ruling that there is— needs to be a factual development on that issue.

*Ms. Henderson*. Before it can address the immunity issues raised by its Defendant, Stella, and Wayne County.

*The Court*. Right. That's our ruling.

We agree with defendants that the trial court never clearly ruled on their (C)(8) arguments. A motion under (C)(8) challenges the "legal sufficiency" of the complaint and must be decided solely on the pleadings. *El-Khalil*, 504 Mich at 159. A need for further factual development is inconsistent with such a motion. Even so, if the motion had merit, plaintiff would have been entitled to amend his complaint under MCR 2.116(I)(5)—which is precisely what the trial court allowed.

Importantly, plaintiff filed an amended complaint after these appeals were initiated. The trial court has not yet ruled on the sufficiency of that amended complaint, and any issues concerning it are not before us. Because the amended complaint now governs this case, defendants' objections to the initial complaint are moot.[3] The trial court acknowledged as much when it stated that, once the amended complaint was filed, "we can just take it from there" and that defendants were free to file a renewed motion.

In sum, defendants received the procedural remedy they claim was denied. If they believe the amended complaint still fails to state a claim, the proper course is to raise those arguments in the trial court on remand.

## III. GOVERNMENTAL IMMUNITY

In addition to their challenges to the sufficiency of plaintiff's pleadings, defendants contend that the governmental immunity act, MCL 691.1401 *et seq*., shields Wayne County from vicarious liability for plaintiff's state-law intentional tort claims. They maintain that the trial court should have granted summary disposition under MCR 2.116(C)(7). Because that argument turns on the legal characterization of the County's functions—not the specific factual allegations in plaintiff's complaint—review is appropriate, and we agree with defendants.

"Summary disposition under MCR 2.116(C)(7) is appropriate if a claim is barred because of immunity granted by law." *Pike v Northern Mich Univ*, 327 Mich App 683, 690; 935 NW2d 86 (2019). We review de novo both the trial court's decision on such a motion and its interpretation

---

[3] In their appellate brief, defendants' pleading-based arguments concern plaintiff's claims under 42 USC 1983 and the state-law intentional tort claims asserted against Stella.

of the governmental immunity act. *Id*. In doing so, we accept as true the complaint's allegations unless contradicted by documentary evidence. *Id*. at 690-691.

The governmental immunity act provides that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). "Generally, governmental agencies in Michigan are statutorily immune from tort liability." *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012). "In determining whether a particular activity constitutes a governmental function, the focus is on the precise activity giving rise to plaintiff's claim rather than on the entity's overall or principal operation." *Margaris v Genesee Co*, 324 Mich App 111, 125; 919 NW2d 659 (2018), quoting *Everett v Saginaw Co*, 123 Mich App 411, 414; 333 NW2d 301 (1983).

*Margaris* illustrates the proper analysis. There, the Genesee County sheriff and undersheriff conducted a sting operation based on allegations that the plaintiff's employee had been stealing meat from a restaurant called the Starlite Diner and selling it to the plaintiff, who owned a different restaurant. *Maragaris*, 324 Mich App at 114-115. The undersheriff facilitated an agreement in which the plaintiff paid $1,800 in restitution to the Starlite Diner's owner in exchange for avoiding criminal charges. *Id*. at 115. The plaintiff later sued the county, the sheriff, the undersheriff, and the owner of the Starlite Diner, "alleging that defendants committed fraud by misrepresenting facts in order to extort money from plaintiff and for intentional infliction of emotional distress, conversion, discrimination, harassment, and civil conspiracy." *Id*. The plaintiff contended that the county "was not engaged in a governmental function" because the sting amounted to private debt collection. *Id*. at 125. We rejected that framing:

> In determining whether a particular activity constitutes a governmental function, the focus is on the precise activity giving rise to plaintiff's claim rather than on the entity's overall or principal operation. Nonetheless, to use anything other than the general activity standard would all but subvert the broad governmental immunity intended by the Legislature because it would be difficult to characterize any tortious act that is a governmental function. Governmental immunity is differentiated from the immunity given to individuals in that the immunity granted by the GTLA to a governmental entity is based upon the general nature of the activity of its employees, rather than the specific conduct of its employees. Thus, to determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort. [*Margaris*, 324 Mich App at 125-126 (cleaned up).]

We concluded that the county "was engaged in the governmental function of law enforcement, and, as discussed, the activity of law enforcement includes investigating suspected crimes and resolving those investigations." *Id*. at 126. It was therefore entitled to immunity. *Id*.

The conduct at issue here likewise falls within the core functions of local government. Representing the County in civil litigation, prosecuting criminal charges, and employing attorneys to perform those functions all fall within the general scope of government activity. Because the analysis focuses on the general nature—and not the specific actions Doherty or Stella are alleged

-6-

to have taken in the course of their duties—Wayne County is immune from vicarious liability under the government immunity act.

Plaintiff claims that defendants' descriptions of the activities "as 'prosecuting crimes' and 'representing the County in civil matters' are overly broad statements of Defendant Doherty's and Defendant Stella's 'governmental mission.' " He asserts that Doherty and Stella acted outside the scope of their authority by abusing their offices to retaliate against him. But that framing misapprehends the relevant standard. As *Margaris* makes clear, the question is not whether the conduct was lawful or authorized, but whether the *type of activity* was one the government ordinarily performs. Recasting official conduct as personal misconduct does not disqualify it from being a governmental function for purposes of immunity.

Plaintiff also relies on language from the fractured decision in *Smith v Dep't of Pub Health*, 428 Mich 540; 410 NW2d 749 (1987), but cites an opinion joined by only two justices. "Plurality decisions in which no majority of the justices participating agree as to the reasoning are not an authoritative interpretation binding on this Court under the doctrine of Stare decisis." *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976). By contrast, *Margaris* is binding precedent, and plaintiff offers no persuasive reason to distinguish it here.

## IV. PLAINTIFF'S CROSS-APPEAL

The trial court did expressly dismiss several aspects of plaintiff's case: his request for injunctive relief, claims for money damages under the Michigan Constitution, and claims against Doherty. Plaintiff cross-appeals those rulings.

## A. INJUNCTIVE RELIEF

Plaintiff first challenges the trial court's conclusion that it lacked authority to enjoin future criminal prosecutions. "Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Jeffrey v Clinton Twp*, 195 Mich App 260, 263-264; 489 NW2d 211 (1992). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

In *Jeffrey*, we addressed whether courts may enjoin criminal prosecutions. There, the defendant township enacted an ordinance prohibiting the possession of certain exotic animals. *Jeffrey*, 195 Mich App at 262. The plaintiffs had acquired a South American cougar before the ordinance was enacted. *Id*. at 261. After the township ordered its removal and the district court issued a warrant for violating the ordinance, the plaintiffs sought injunctive relief. *Id*. at 263. The circuit court "permanently enjoin[ed] defendant from enforcing the ordinance against plaintiffs" and later clarified "that the injunction applie[d] only to plaintiffs herein and with respect to the cougar they purchased in November 1987." *Id*.

On appeal, the township argued that "criminal prosecutions are precluded from being enjoined." *Id*. We rejected that categorical position as "an overstatement" but nevertheless agreed "that injunctive relief was improper in this case." *Id*. While recognizing that criminal prosecutions

are generally not subject to injunctive relief, the Court cited two Supreme Court cases—*Mich Salt Works v Baird*, 173 Mich 655; 139 NW 1030 (1913), and *Ritchie v Hamtramck*, 340 Mich 284; 65 NW2d 732 (1954)—for a narrow exception. *Jeffrey*, 195 Mich App at 264. Under that exception, injunctive relief may be granted "where public officials are proceeding illegally and improperly under a claim of right, where it is alleged, as in the instant case, that the complainant thereby suffers irreparable injury." *Id.*, quoting *Ritchie*, 340 Mich at 288. That irreparable injury "must result from the acts of the public officials in enforcing the allegedly invalid law." *Jeffrey*, 195 Mich App at 264. In cases in which "an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved." *Id.*, quoting *Diggs v State Bd of Embalmers & Funeral Directors*, 321 Mich 508, 514; 32 NW2d 728 (1948).

The rule from *Jeffrey* is therefore that courts may not enjoin criminal prosecutions unless public officials are proceeding under an invalid law, and the plaintiff will suffer irreparable harm as a result. *Jeffrey*, 195 Mich App at 264, citing *Ritchie*, 340 Mich at 288, and *Diggs*, 321 Mich at 514. Plaintiff in this case does not allege that the statute under which he was prosecuted is invalid. The trial court therefore correctly determined that injunctive relief was unavailable.

Plaintiff cites *Younger v Harris*, 401 US 37; 91 S Ct 746; 27 L Ed 2d 669 (1971), and *Dombrowski v Pfister*, 380 US 479; 85 S Ct 1116; 14 L Ed 2d 22 (1965), for the proposition that courts may enjoin criminal proceedings when the target of those proceedings demonstrates irreparable harm. But those cases address when *federal* courts may intervene in *state* prosecutions—raising issues of federalism and comity not relevant to this appeal. Moreover, *Dombrowski* involved prosecutions found to suppress free expression in an unconstitutional manner. 380 US at 492-498. And in *Younger*, 401 US at 53, the Supreme Court cautioned that *Dombrowski* "should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions."

Because plaintiff has not shown that his prosecution was brought under an invalid law or that he otherwise falls within the narrow exception recognized in *Jeffrey*, the trial court properly denied his request to enjoin future prosecutions.

## B. MONETARY DAMAGES

Plaintiff next challenges the trial court's conclusion that he cannot pursue monetary damages against a local government for allegedly violating the Michigan Constitution. We agree with the trial court that plaintiff has no legal basis for such a claim.

There is no dispute that plaintiff has constitutionally protected rights—under both the United States and Michigan Constitutions—to criticize the government and to seek redress. The First Amendment guarantees freedom of expression and the right to petition the government for grievances. US Const, Am I; *Moody v NetChoice, LLC*, 603 US 707, 723; 144 S Ct 2383; 219 L Ed 2d 1075 (2024); *Bill Johnson's Restaurants, Inc v NLRB*, 461 US 731, 741; 103 S Ct 2161; 76 L Ed 2d 277 (1983). The Michigan Constitution guarantees "the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances." Const 1963, art 1, § 3; *League of Women Voters of Mich v Secretary of*

*State*, 333 Mich App 1, 26; 959 NW2d 1 (2020).  It also provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press."  Const 1963, art 1, § 5; *League of Women Voters*, 333 Mich App at 26-27.

The Supreme Court has held that "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases."  *Smith*, 428 Mich at 544.  The question here is whether that remedy extends to counties.

Our caselaw says it does not.  In *Jones v Powell*, 462 Mich 329; 612 NW2d 423 (2000), the plaintiff sued the City of Detroit and individual police officers for common-law torts and violations of the Michigan Constitution.  The claims arose from the officers' forced entry into the plaintiff's home to search for a suspect they mistakenly believed was inside.[4]  *Id*. at 331-332.  Although the jury awarded damages for the state constitutional claims, this Court reversed, explaining that *Smith* created only "a narrow remedy against the state where none otherwise would have existed."  *Jones v Powell*, 227 Mich App 662, 671; 577 NW2d 130 (1998).  That rationale, we held, does not extend to municipalities or their employees.  *Id*.  The Supreme Court affirmed, holding that "*Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee."  *Jones*, 462 Mich at 335.  The Court emphasized that *Smith* was based on "the unavailability of any other remedy," a concern that is "inapplicable in actions against a municipality or an individual defendant."  *Id*. at 337.  The Court concluded that § 1983 and common-law tort claims already provide sufficient recourse against local governments and their officials.  *Id*.

Undeterred by *Jones*'s clear holding, plaintiff turns to *Bauserman v Unemployment Ins Agency*, 509 Mich 673; 983 NW2d 855 (2022), to contend that damages claims are available against local governments.  In *Bauserman*, the plaintiffs alleged that a state agency violated their due process rights under the Michigan Constitution, Const 1963, art 1, § 17, when it "adjudicated allegations of fraud, seized plaintiffs' tax returns, and imposed penalties on plaintiffs without providing meaningful notice or an opportunity to be heard . . . ."  *Id*. at 681.  The Court reiterated *Smith*'s holding that "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases."  *Id*. at 693, quoting *Smith*, 428 Mich at 544.  After analyzing the plaintiff's claims, the Court recognized a right to seek monetary relief.  It explained:

> When the language of the Constitution itself does not delegate that responsibility to another branch of government and when the Legislature has not enacted an adequate alternate remedy for the constitutional violation, we will recognize and enforce a monetary-damages remedy.  [*Id*. at 711.]

In a footnote addressing concerns raised by Justice VIVIANO in his dissenting opinion, the Court expressly declined to extend its holding to local governments or their officials:

---

[4] The plaintiff also asserted claims under § 1983, which were removed to federal court.  *Jones*, 462 Mich at 332.

Justice VIVIANO mentions liability for cities and villages as well as individuals who operate public utilities. But our holding is that the *state* is liable for harms it commits in violation of the Constitution; whether other entities, such as municipal governments or individual government actors, can be liable for constitutional torts is not before us, and we decline to address that question in what would be dictum. [*Bauserman*, 509 Mich at 708 n 13.]

Thus, *Bauserman* reaffirmed the limited scope of *Smith* and did not disturb the clear bar set by *Jones*. Even if a future decision were to extend *Bauserman* to local governments, its reasoning would still require the absence of alternative remedies. Here, plaintiff alleges that defendants violated his state constitutional rights to free expression and to petition the government for redress—rights also guaranteed by the United States Constitution. *Mills v Alabama*, 384 US 214, 218; 86 S Ct 1434; 16 L Ed 2d 484 (1966); US Const, Am I. Plaintiff therefore has a potential avenue for relief under 42 USC 1983, assuming he can properly plead and prove his claims. Because alternative remedies are available, and because *Jones* remains binding, the trial court correctly dismissed plaintiff's claim for damages under the Michigan Constitution.

## C. DOHERTY'S IMMUNITY

Finally, plaintiff contends that the trial court erred in concluding that Doherty is entitled to absolute prosecutorial immunity. While the law on this subject is unsettled, we agree that Doherty is not entitled to absolute immunity.

## 1. PROSECUTORIAL IMMUNITY

Governmental immunity for public officials is set out in MCL 691.1407. Under § 1407(5), "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Because Doherty is an assistant prosecutor—not the "elective or highest appointive executive official"— he does not qualify for immunity under § 1407(5). Instead, his immunity is governed by § 1407(2), which applies to government employees.

Under § 1407(2), an employee is immune from tort liability if: (1) the employee "is acting or reasonably believes he or she is acting within the scope of his or her authority"; (2) "[t]he governmental agency is engaged in the exercise or discharge of a governmental function"; and (3) the conduct at issue "does not amount to gross negligence that is the proximate cause of the injury or damage." Section 1407(3) further clarifies that § 1407(2) "does not alter the law of intentional torts as it existed before July 7, 1986," the effective date of the 1986 amendments to the statute. Because plaintiff alleges intentional torts, the relevant inquiry is what the law provided regarding prosecutorial immunity before that date.

The leading case on prosecutorial immunity in that context is *Bischoff v Calhoun Co Prosecutor*, 173 Mich App 802; 434 NW2d 249 (1988). In *Bischoff*, the plaintiff, a former police officer, brought claims for defamation and intentional interference with contractual rights against a county prosecutor who had allegedly reported the plaintiff's suspected involvement in criminal

activity to his employer. *Id.* at 803-804. No charges were filed, but the plaintiff sued. *Id.* at 804. This Court held that the prosecutor was entitled to absolute immunity under § 1407(5). *Id.* at 806.

In reaching that conclusion, the Court addressed the plaintiff's argument that the prosecutor "was not performing a judicial or quasi-judicial function" and therefore should not be protected by absolute immunity. *Id.* at 807. The Court acknowledged that courts had previously "distinguished activity which is quasi-judicial in nature, and therefore absolutely immune, from prosecutorial activity which is essentially investigative or administrative and therefore entitled to only the protection of the qualified immunity." *Id.* at 809, citing *Imbler v Pachtman*, 424 US 409, 430; 96 S Ct 984; 47 L Ed 2d 128 (1976), and *Payton v Wayne Co*, 137 Mich App 361, 367; 357 NW2d 700 (1984).

Although *Bischoff* ultimately rested on the statutory language, its endorsement of the functional distinction between quasi-judicial and administrative or investigative functions remains instructive. That said, *Bischoff* is not controlling here. Unlike the prosecutor in *Bischoff*, Doherty does not qualify for § 1407(5) immunity, and the opinion predates November 1, 1990, meaning it is not binding under MCR 7.215(J)(1).

Nevertheless, this Court has repeatedly cited *Bischoff* in unpublished opinions to reaffirm the distinction between absolute immunity for quasi-judicial acts and only qualified immunity for investigative or administrative conduct.[5] We find that approach persuasive. Accordingly, we conclude that Doherty is entitled to absolute immunity only if the challenged conduct was quasi-judicial in nature. If instead his actions were investigative or administrative, he is entitled only to qualified immunity.

## 2. APPLICATION TO DOHERTY

Having established that Doherty's entitlement to absolute immunity depends on the nature of his conduct, we must determine whether his alleged actions were quasi-judicial or instead administrative or investigative in character. We conclude that only qualified immunity applies.

The relevant principles are set out in *Buckley v Fitzsimmons*, 509 US 259; 113 S Ct 2606; 125 L Ed 2d 209 (1993). There, the Supreme Court explained that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* at 273. Those investigatory functions include activities "normally performed by a detective or police officer," such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested . . . ." *Id.* By contrast, actions such as evaluating evidence or interviewing witnesses in preparation for trial fall within a prosecutor's quasi-judicial

---

[5] See, e.g., *Genuine Solutions Counseling Ctr PLLC v Governor*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2024 (Docket No. 364180); *Trendell v Hackel*, unpublished opinion per curiam of the Court of Appeals, issued September 12, 2019 (Docket No. 345520); *McCarthy v Scofield*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 2009 (Docket No. 284129); *Kasben v Aylsworth*, unpublished per curiam opinion of the Court of Appeals, issued October 5, 2001 (Docket No. 223084).

-11-

role and are protected by absolute immunity. *Id*. The Sixth Circuit applied that distinction in *Harris v Bornhorst*, 513 F3d 503, 510-511 (CA 6, 2008), where it held that a prosecutor who ordered an arrest without first assessing probable cause acted "in an administrative or investigative capacity" and was therefore "not entitled to absolute immunity."

Although plaintiff filed an amended complaint while this appeal was pending, Doherty's immunity turns on the legal character of the conduct alleged—an issue that can be resolved on the face of the original pleadings. Plaintiff alleged that Doherty contacted the new officer in charge of the task force to seek clarification, recommended submission of the warrant request, and directed the officer in charge to file that request. Those allegations suggest that Doherty's conduct was aimed at reviving a dormant prosecution and falls within the category of investigative or administrative acts, not quasi-judicial ones. Because the alleged conduct is not protected by absolute immunity, the trial court erred in dismissing the claims against Doherty on that basis. We express no opinion as to whether plaintiff has otherwise stated a valid claim against Doherty, but we remand for the trial court to evaluate Doherty's entitlement to qualified immunity.

## V. CONCLUSION

Given the complex issues and procedural posture of this appeal, we summarize our holdings as follows: First, we affirm the trial court's dismissal of plaintiff's claims for injunctive and monetary relief under the Michigan Constitution. Second, we hold that prosecutors are entitled to absolute immunity only for judicial or quasi-judicial functions, and qualified immunity for administrative or investigative acts. Because plaintiff alleges that Doherty's conduct fell into the latter category, we reverse the trial court's grant of absolute immunity and remand for proceedings consistent with a qualified immunity analysis. Third, we hold that Wayne County is entitled to governmental immunity from vicarious liability for the alleged intentional torts of its employees and reverse the trial court's ruling to the contrary. Finally, we conclude that defendants' challenges to the sufficiency of plaintiff's original complaint are moot in light of the amended complaint filed under MCR 2.116(I)(5). This ruling does not preclude defendants from filing a renewed motion for summary disposition under MCR 2.116(C)(8) on remand.

/s/ Matthew S. Ackerman
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien