# STATE OF MICHIGAN

# COURT OF APPEALS

SS Next Friend of Minor LM, DS Next Friend of
Minor SD, MJ Next Friend of Minor MS, DC Next
Friend of Minor LB, TF Next Friend of Minors
DF, ID, and FC, LH Next Friend of Minor CM,

        Plaintiffs-Appellees,

v

STATE OF MICHIGAN, STATE BOARD OF
EDUCATION, DEPARTMENT OF
EDUCATION, and STATE SUPERINTENDENT
OF PUBLIC INSTRUCTION,

        Defendants-Appellants,

and

HIGHLAND PARK SCHOOL DISTRICT,
HIGHLAND PARK SCHOOL DISTRICT
EMERGENCY MANAGER, HIGHLAND PARK
PUBLIC SCHOOL ACADEMY SYSTEM, and
LEONA GROUP, L.L.C.,

        Defendants.

FOR PUBLICATION
November 6, 2014
9:10 a.m.

Nos. 317071; 317072
Wayne Circuit Court
LC No. 12-009231-CZ

SS Next Friend of Minor LM, DS Next Friend of
Minor SD, MJ Next Friend of Minor MS, DC Next
Friend of Minor LB, TF Next Friend of Minors
DF, ID, and FC, and LH Next Friend of Minor
CM,

        Plaintiffs-Appellees,

v

No. 317073
Wayne Circuit Court
LC No. 12-009231-CZ

-1-

STATE OF MICHIGAN, STATE BOARD OF
EDUCATION, DEPARTMENT OF
EDUCATION, STATE SUPERINTENDENT OF
PUBLIC INSTRUCTION, HIGHLAND PARK
PUBLIC SCHOOL ACADEMY SYSTEM, and
LEONA GROUP, L.L.C.,

        Defendants,

and

HIGHLAND PARK SCHOOL DISTRICT and
HIGHLAND PARK SCHOOL DISTRICT
EMERGENCY MANAGER,

        Defendants-Appellants.

---

Before:  MURRAY, P.J., and JANSEN and SHAPIRO, JJ.

JANSEN, J.

In Docket No. 317071, defendants State of Michigan, State Board of Education, Michigan Department of Education, and State Superintendent of Public Instruction (hereinafter "the state defendants") appeal by right the denial of their motion for summary disposition on the basis of governmental immunity.  In Docket No. 317072, the state defendants appeal by leave granted the same order, denying in part the remainder of their motion for summary disposition. In Docket No. 317073, defendants Highland Park School District and Highland Park School District Emergency Manager (hereinafter "the district defendants") appeal by leave granted that same order, denying in part their motion for summary disposition and an amended scheduling order.  We reverse and remand for entry of judgment in favor of the state and district defendants.

This litigation arises from a complaint filed by the American Civil Liberties Union ("ACLU") on behalf of eight minor plaintiffs, who are students in Highland Park, asserting plaintiffs' receipt of inadequate and deficient instruction from the Highland Park Public Schools. According to plaintiffs, this inadequate and deficient instruction has resulted in their failure to obtain basic literacy skills and reading proficiency as required by the state.  Specifically, plaintiffs sought special assistance in accordance with MCL 380.1278(8), premised on their demonstrated lack of proficiency on the reading portion of the standardized Michigan Educational Assessment Program ("MEAP") test.

The state defendants argue that the trial court erred by denying their motion for summary disposition based on governmental immunity.  We review de novo the trial court's grant or denial of summary disposition. *Wilson v King*, 298 Mich App 378, 381; 827 NW2d 203 (2012).

The state defendants assert that they were entitled to immunity premised on MCL 141.1572,[1] which states:

> This act does not impose any liability or responsibility in law or equity upon this state, any department, agency, or other entity of this state, or any officer or employee of this state, or any member of a receivership transition advisory board, for any action taken by any local government under this act, for any violation of the provisions of this act by any local government, or for any failure to comply with the provisions of this act by any local government. A cause of action against this state or any department, agency, or entity of this state, or any officer or employee of this state acting in his or her official capacity, or any membership of a receivership transition advisory board acting in his or her official capacity, may not be maintained for any activity authorized by this act, or for the act of a local government filing under chapter 9, including any proceeding following a local government's filing.

Specifically, the state defendants argue that this statutory provision, part of the Local Financial Stability and Choice Act, MCL 141.1541 *et seq.*, is applicable because plaintiffs' claims are premised on the state's liability through appointment of an emergency manager for the Highland Park schools. We note that the immunity provision contained in MCL 141.1572 is, in accordance with MCL 141.1544(6), applicable to any predecessor emergency manager laws as well.

In support of their assertion, the state defendants cite three paragraphs of plaintiffs' amended complaint, which consists of 125 separate, numbered paragraphs of allegations. Plaintiffs' original and amended complaints assert state responsibility for the failure to provide a bare or minimal level of education as allegedly mandated by Article 8 of the Michigan Constitution and adequate remedial services as delineated in MCL 380.1278(8). While plaintiffs allege that the state and district defendants have attempted to delegate responsibility for the provision of educational services to the district defendants through the operation of charter schools, plaintiffs do not suggest that establishment of an emergency manager is the basis for the litigation. Rather, plaintiffs repeatedly assert several diverse bases for liability of the state defendants, including Const 1963, art 8, §§ 1, 2, and 3; MCL 380.1278(8); MCL 16.400 *et seq.*; and MCL 388.1009 *et seq.* They have denied that their complaint arises from or is dependent upon the imposition of an emergency manager for the school district. Plaintiffs' allegations indicate the existence of the alleged educational and service deficiencies long before the imposition of the emergency manager.

The trial court was partially correct in its denial of summary disposition premised on immunity under MCL 141.1572. The stated purpose of the Local Financial Stability and Choice Act is "to safeguard and assure financial accountability of local units of government and school districts." *Id.* Given the financial purpose of the Act, it is difficult to sustain the state defendants' contention that it is applicable to all actions undertaken by an emergency manager or

---

[1] 2012 PA 436, § 32, effective March 28, 2013.

those entities associated with him or her, involving the violation of any other statutory provisions not specifically encompassed within the Act, such as MCL 380.1278(8). At the outset, MCL 141.1572 specifically limits imposition of liability "for any action taken by any local government *under this act*, for any violation of the provisions *of this act* by any local government, or for any failure to comply with the provisions *of this act* by any local government." (Emphasis added.) While an emergency manager is authorized by MCL 141.1551(1)(e) to include in a "financial and operating plan" "an educational plan" for school districts, MCL 141.1554 suggests that the role is financial in nature, encompassing the negotiation of contracts, disbursement of funds, reductions in class schedules, closing of schools, and related actions.

In *Tellin v Forsyth Twp*, 291 Mich App 692, 700-701; 806 NW2d 359 (2011), this Court recognized:

> A court must give effect to the Legislature's intent when construing a statute. In determining the Legislature's intent, this Court first looks at the language of the statute itself. This Court gives the words of the statutes their plain and ordinary meaning and will look outside the statutory language only if it is ambiguous. "The Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language. . . ." In determining the plain meaning of the statute, this Court uses the "fair and natural import of the terms employed" and gives effect "to every word, phrase, and clause" as far as possible. [Citations omitted.]

The Legislature's use of the phrases "under this act" and "of this act" denotes restriction of liability to the specific provisions of the Local Financial Stability and Choice Act and cannot be construed, as suggested by the state defendants, to encompass a completely separate statutory provision, MCL 380.1278(8). Thus, although any approvals provided by the state and district defendants of an educational plan by and through the appointment of the emergency manager and system defendants may be a proper subject for immunity under MCL 141.1572, claims of constitutional and separate statutory violations are not encompassed.

The question, then, is whether the state defendants are otherwise entitled to governmental immunity. To answer this question, we must first determine whether plaintiffs have stated a cause of action arising directly from the Michigan Constitution or MCL 380.1278(8).

As this Court stated in *Co Road Ass'n of Mich v Governor*, 287 Mich App 95, 121; 782 NW2d 784 (2010):

> As a general rule, "'governmental immunity is not available in a state court action where it is alleged that the state violated a right conferred by the state constitution.'" *Jones v Powell*, 227 Mich App 662, 673; 577 NW2d 130 (1998), aff'd 462 Mich 329; 612 NW2d 423 (2000), quoting *Marlin v Detroit*, 177 Mich App 108, 114; 441 NW2d 45 (1989). See also *Smith v Dep't of Pub Health*, 428 Mich 540, 544; 410 NW2d 749 (1987) ("Where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action.").

Specifically, "[T]he state will be liable for a violation of the state constitution only in cases where a state custom or policy mandated the official's or employee's actions." *Reid v Dep't of Corrections*, 239 Mich App 621, 629; 609 NW2d 215 (2000); see also *Carlton v Dep't of Corrections*, 215 Mich App 490, 504-505; 546 NW2d 671 (1996). As this Court explained in *Burdette v State*, 166 Mich App 406, 408-409; 421 NW2d 185 (1988), citing *Smith*, 428 Mich at 643-644:

> Governmental immunity is not available in a state court action where it is alleged that the state has violated a right conferred by the Michigan Constitution. . . . [D]efendant cannot claim immunity where the plaintiff alleges that defendant has violated its own constitution. Constitutional rights serve to restrict government conduct. These rights would never serve this purpose if the state could use governmental immunity to avoid constitutional restrictions.

The state and district defendants contend that the trial court erred by denying them summary disposition because plaintiffs cannot demonstrate a viable cause of action under the Michigan Constitution or MCL 380.1278(8). In contrast, plaintiffs contend that the violation and basis for liability is premised on Const 1963, art 8, §§ 1 and 2, which provide:

Section 1. Encouragement of education

> Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.

Section 2. Free public elementary and secondary schools; discrimination

> The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin.

There is no language within the cited constitutional provisions to support plaintiffs' claims. Article 8, § 1 merely "encourage[s]" education, but does not mandate it. Article 8, § 2 is specifically contrary to plaintiffs' position as it only requires the "legislature" to "maintain and support a system of free public elementary and secondary schools," with a local school district having the responsibility to "provide for the education of its pupils." It has been recognized that the State Board of Education falls within the executive, not the legislative, branch of our government, *Straus v Governor*, 459 Mich 526, 537; 592 NW2d 53 (1999), and it is therefore not a part of the branch of government referenced by the constitutional provision. Based on the language of the cited constitutional provisions, the role of the state in education is neither as direct nor as encompassing as argued by plaintiffs. The trial court should have granted summary disposition in favor of the state and district defendants with respect to plaintiffs' constitutional claims.

Although not cited by plaintiffs, Const 1963, art 8, § 3 defines the duties of the State Board of Education, and provides additional insight:

Leadership and general supervision over all public education, including adult education and instructional programs in state institutions, except as to institutions of higher education granting baccalaureate degrees, is vested in a state board of education. It shall serve as the general planning and coordinating body for all public education, including higher education, and shall advise the legislature as to the financial requirements in connection therewith.

Like the constitutional provisions considered previously, this language provides support for our conclusion that plaintiffs do not have a direct cause of action arising under the Michigan Constitution.

The courts have long recognized that, for constitutional purposes, "education, as important as it may be, has been held not to be a fundamental interest." *Martin Luther King Junior Elementary Sch Children v Mich Bd of Ed*, 451 F Supp 1324, 1328 (ED Mich, 1978), citing *San Antonio Independent Sch Dist v Rodriguez*, 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973). Further, as our Supreme Court observed in *Milliken v Green*, 390 Mich 389, 406; 212 NW2d 711 (1973):

It must be apparent by now that we are of the opinion that the state's obligation to provide a system of public schools is not the same as the claimed obligation to provide equality of educational opportunity. Because of definitional difficulties and differences in educational philosophy and student ability, motivation, background, etc., no system of public schools can provide equality of educational opportunity in all its diverse dimensions. All that can properly be expected of the state is that it maintain and support a system of public schools that furnishes adequate educational services to all children.

In sum, the cited provisions of the Michigan Constitution require only that the Legislature provide for and finance a system of free public schools. The Michigan Constitution leaves the actual intricacies of the delivery of specific educational services to the local school districts. We conclude that plaintiffs have not stated a claim or cause of action arising directly under the Michigan Constitution.

Plaintiffs further argue that they have stated a claim under MCL 380.1278, with particular emphasis on MCL 380.1278(8), which provides:

Excluding special education pupils, pupils having a learning disability, and pupils with extenuating circumstances as determined by school officials, a pupil who does not score satisfactorily on the 4th or 7th grade Michigan educational assessment program reading test shall be provided special assistance reasonably expected to enable the pupil to bring his or her reading skills to grade level within 12 months.

The language of this statute indicates the dichotomy in responsibility between the state and local school districts in the provision of educational services. Specifically, MCL 380.1278(3) refers to the local district's responsibility to establish an actual curriculum for implementation with students. Any role of the state is merely advisory in suggesting a model

curriculum subject to adoption by the local districts. MCL 380.1278(2). Similarly, subsection (8) leaves the determination of students identified as deficient on the MEAP reading tests for "school officials," indicating decisionmaking at the local, and not state, level. This is also consistent with provisions of the Revised School Code and Schools and School Aid Act. MCL 380.11a(3) defines the general powers of school districts:

> A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as provided by law, may exercise a power incidental or appropriate to the performance of a function related to operation of the school district in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:
>
> (a) Educating pupils. In addition to educating pupils in grades K-12, this function may include operation of preschool, lifelong education, adult education, community education, training, enrichment, and recreation programs for other persons.

In turn, MCL 380.1282 provides in relevant part:

> (1) The board of a school district shall establish and carry on the grades, schools, and departments it considers necessary or desirable for the maintenance and improvement of its schools and determine the courses of study to be pursued.
>
> (2) The board of a school district shall provide a core academic curriculum, learning processes, special assistance particularly for students with reading disorders or who have demonstrated marked difficulty in achieving success on standardized tests, and sufficient access to each of these so that all pupils have a fair opportunity to achieve a state endorsement under section 1279.

Finally, the statutory provision establishing MEAP testing, MCL 388.1081, indicates the very general oversight and informational nature of the state's role in educational services, providing:

> A statewide program of assessment of educational progress and remedial assistance in the basic skills of students in reading, mathematics, language arts and/or other general subject areas is established in the department of education which program shall:
>
> (a) Establish meaningful achievement goals in the basic skills for students, and identify those students with the greatest educational need in these skills.
>
> (b) Provide the state with the information needed to allocate state funds and professional services in a manner best calculated to equalize educational opportunities for students to achieve competence in such basic skills.
>
> (c) Provide school systems with strong incentives to introduce educational programs to improve the education of students in such basic skills and model programs to raise the level of achievement of students.

(d) Develop a system for educational self-renewal that would continuously evaluate the programs and by this means help each school to discover and introduce program changes that are most likely to improve the quality of education.

(e) Provide the public periodically with information concerning the progress of the state system of education. Such programs shall extend current department of education efforts to conduct periodic and comprehensive assessment of educational progress.

Read together with these related statutory provisions, it is clear that MCL 380.1278(8) does not impose a duty on the state defendants to directly provide services for students who do not perform satisfactorily on the MEAP test.

We acknowledge that the applicability of this provision is different with regard to the district defendants. MCL 380.1278(8) mandates "school officials" to identify pupils that fail to "score satisfactorily on the 4th or 7th grade [MEAP] reading test" and to provide these individuals with "special assistance reasonably expected to enable the pupil[s] to bring [their] reading skills to grade level within 12 months." However, there remain at least two problems with plaintiffs' argument. First, the trial court denied plaintiffs' request to certify two classes of students. Accordingly, any remedy or outcome of this litigation is restricted to the eight identified students. Second, plaintiffs' pleadings are only sufficient with regard to two of the eight students named, FC and ID, having deficient MEAP scores in reading for the relevant grade levels. Three students, CM, LB and MS, do not necessarily fall within the purview of MCL 380.1278(8). CM was in the third grade at the time and, therefore, cannot have MEAP scores for 4th and 7th grade reading proficiency. Although LB and MS have progressed further in school, there are no specific MEAP scores identified for them that are consistent with the grade levels identified in MCL 380.1278(8). Finally, although SD, DF, and LM have deficient reading scores on the MEAP for the relevant grade levels, they have already been provided additional instruction. Further, it remains to be determined whether the qualifying students are subject to exclusion from additional instruction premised on "extenuating circumstances as determined by school officials." MCL 380.1278(8). While the form of the additional instruction may be deemed insufficient given the lack of progress in developing reading proficiency for these students, this would constitute a separate and distinct claim.

With respect to the district defendants, then, the question is whether MCL 380.1278(8) authorizes, for the qualified students, a private cause of action and whether such an action would be subject to immunity. MCL 380.1278 contains no express authorization permitting a private cause of action against a local school district for failing to comply with the statutory requirements; nor is there any evidence that the Legislature intended such a remedy. *Lash v Traverse City*, 479 Mich 180, 194; 735 NW2d 628 (2007). Given the absence of any express legislative authorization, the statutory provision does not provide a private cause of action for monetary damages. *Id*.

In addition, we note that a school district, its board members, and its employees are generally protected by governmental immunity. See MCL 691.1407(1) and (2); MCL 691.1401(b) and (d); *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 400 n 8; 792

NW2d 686 (2010). Immunity would not be available under the circumstances, as explained by our Supreme Court:

> The inquiry is different when, as here, a governmental agency is involved. Because governmental agencies are generally immune from suit under the governmental tort liability act, MCL 691.1407, a plaintiff may sue a governmental agency for damages only when the Legislature *expressly* so authorizes. These cases do not establish that a plaintiff may infer a private cause of action for damages against a governmental agency. Rather, in a suit against a governmental agency, a plaintiff generally may seek only injunctive or declaratory relief upon showing that the particular plaintiff has a clear, legally enforceable right that the particular defendant had a duty to protect. [*Id.* at 399-400, citing *Lash*, 479 Mich at 194, 196 (other citations omitted).]

Plaintiffs in this matter contend that they are not seeking economic damages, but rather a writ of mandamus to enforce the statutory provision, precluding the district defendants' claim of immunity. They assert that although the additional services required under MCL 380.1278(8) may require an ancillary expenditure of funds, the relief sought is primarily equitable and nonmonetary in nature.

A trial court's grant or denial of a writ of mandamus is reviewed for an abuse of discretion. *Casco Twp v Secretary of State*, 472 Mich 566, 571; 701 NW2d 102 (2005). "A court by definition abuses its discretion when it makes an error of law." *In re Waters Drain Drainage Dist*, 296 Mich App 214, 220; 818 NW2d 478 (2012). Although the underlying question whether the writ should be issued is reviewed for an abuse of discretion, "this Court reviews de novo as questions of law whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance." *Barrow v Detroit Election Comm*, 301 Mich App 404, 411; 836 NW2d 498 (2013).

" '[A] writ of mandamus is an extraordinary remedy and will only be issued where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result.' " *Sal-Mar Royal Village, LLC v Macomb Co Treasurer*, 301 Mich App 234, 237; 836 NW2d 236 (2013), quoting *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 284; 761 NW2d 210 (2008).

In *Hanlin v Saugatuck Twp*, 299 Mich App 233, 248; 829 NW2d 335 (2013), this Court explained:

> A ministerial act is defined as one for which the law prescribes and defines the duty to be performed with such precision and certainty it leaves nothing to the exercise of judgment or discretion. If the act requested by the plaintiff involves judgment or an exercise of discretion, a writ of mandamus is inappropriate. [Citation omitted.]

With regard to plaintiffs' request for a writ of mandamus, MCL 380.1278(8) indicates that plaintiffs had a legal right to receive "special assistance" in specifically defined or restricted circumstances. In turn, the district defendants had a statutory duty under MCL 380.1278(8) to provide "special assistance" to otherwise-qualified students who did "not score satisfactorily on the 4th or 7th grade [MEAP] reading test."

What precludes issuance of such a writ, however, is that the act to be performed cannot be considered ministerial in nature, as the school district is afforded wide-ranging discretion. Initially, the school district is permitted to identify the qualifying students, but the statute fails to define which pupils may have "extenuating circumstances" and thus may not be encompassed within the statute. In addition, the service to be provided is comprised of "special assistance reasonably expected to enable the pupil to bring his or her reading skills to grade level within 12 months." While a defined end goal is therefore provided, the actual method to be used is undefined and quite subjective, with the selected programs and instruction varying considerably based on the individual needs of the pupils and their respective academic grade and proficiency levels. Consequently, by definition, a writ of mandamus is not an appropriate remedy in this case. See *Hanlin*, 299 Mich App at 248.

The district defendants further assert error by the trial court in failing to dismiss plaintiffs' claims based on the concepts of mootness and justiciability.

Given the lack of a remedy specified by the statute at issue, MCL 380.1278(8), we conclude that enforcement of this provision is not a matter for the courts, but rather an administrative matter better resolved between individuals seeking to obtain or enforce services and the pertinent school district. Moreover, it would be difficult, if not impossible, for the courts to fashion innumerable individual remedies. Indeed, determinations regarding the type of services that are necessary for individual pupils to meet the statutory reading-skills requirements fall within the expertise of the schools—not the courts. As observed in a slightly different context, "[g]iven the nature of the case," it is incumbent upon the courts to "take note of the limits of judicial competence in such matters." *Straus*, 459 Mich at 531. Courts "cannot serve as . . . overseers . . . weighing the costs and benefits of competing . . . ideas or the wisdom of . . . taking certain actions, but may only determine whether some . . . provision has been violated . . . ." *Id.* While there is little genuine controversy that the district defendants have abysmally failed their pupils, the mechanism to correct this failure is not through the court system, particularly given the remedy sought by plaintiffs. The problem is multifaceted, comprised of deficiencies in the manner and type of academic instruction received, but also impacted by a variety of social and economic forces unique to the circumstances of each student. Consequently, there is no one-size-fits-all solution and the greatest impact for each student will be one that is made up of several components and addresses his or her individual needs. Such a solution is not available through judicial intervention. We conclude that the specific dispute at issue in this case, calling for the implementation of individualized reading programs and complex educational services, perhaps over a long period of time, is nonjusticiable in nature as it would necessitate undue intrusion upon the other branches of government and would require us to move beyond our area of judicial expertise. See *House Speaker v Governor*, 443 Mich 560, 574; 506 NW2d 190 (1993).

Given our conclusion that the trial court improperly denied summary disposition for the state and district defendants, we need not decide whether the issues in this case have been rendered moot by the appointment of an emergency manager and the subsequent contracting for charter schools. For the same reason, we decline to consider the district defendants' claims regarding the issuance of an amended scheduling order.[2]

Reversed and remanded for entry of judgment in favor of the state and district defendants. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, a public question having been involved.


/s/ Kathleen Jansen

---

[2] It is true, as our dissenting colleague observes, that plaintiffs also requested declaratory relief. Plaintiffs' request for declaratory relief was not set forth as a separately labeled cause of action in their complaint. But this was not fatal to their request. "Although it has become commonplace in this state for a plaintiff to assert a request for declaratory relief as a separately labeled cause of action within his or her complaint, this is technically improper because 'declaratory relief is a remedy, not a claim.'" *Wiggins v City of Burton*, 291 Mich App 532, 561; 805 NW2d 517 (2011) (citation omitted). Nevertheless, given our foregoing analysis, we conclude that plaintiffs were not entitled to declaratory relief in this matter.